Good morning. May it please the court, Hanny Ficoria, Federal Defenders of San Diego, on behalf of the defendant and appellant, Mario Lara. Your honors, with my time before the court this morning, I would like to just focus on the third issue, which is with respect to the district court's reimposition of supervised release. The district court abused its discretion in reimposing a 22-month term of supervised release over both the probation office, Mr. Lara, and the government's objection, solely because it believed it was mousetrapped to reimpose supervised release so it would not appear he was punishing Mr. Lara. The district court did this despite the fact that it itself did not want to reimpose another term of supervised release. Specifically, on page 88 of the record, the district court told the probation officer, quote, I agree. If I were you, I'd be very frustrated. You bent over backwards to try to supervise this fellow, and you're showing he's not amenable. So I would say, OK, fine. Let's give him a year in jail and end the whole thing. And if he gets in trouble again, be somebody else's problem to deal with it. But I don't think I can do that under the current state of the law in this circuit, end quote. And it's our position, your honors, that this was a complete abuse of discretion as well as a misinterpretation of Section 3583H of Title 18. Under 3583H, a district court has the discretion to reimpose another term of supervised release following the imposition of a custodial sentence on a revocation of supervised release. But 3583H is very explicitly clear. It says the district court may reimpose another term of supervised release. And this court, as well as almost every other circuit to address the issue, has found and seized on that language in 3583H that that authority is discretionary. In fact, just this last year in United States v. NIDA, a case I did in my brief, this court held, quote, under 18 U.S.C. 3583H, the district court may impose a term of supervised release after imprisonment for violations of conditions of supervised release. So it's abundantly clear that that discretion, that it is discretionary. And what the district court did here was engage in a rather lengthy discussion with both the probation officer, the government counsel, as well as defense counsel regarding how he could impose a custodial sentence, and in this case the specific recommendation was a recommendation of 10 months by the probation officer, but not reimpose another term of supervised release. And the district court made it very clear that he felt he could not do that because he believed if he did such a thing, it would appear as if he were punishing Mr. Lahr, which as he correctly understood this court's decision in McBell, he's not permitted to do on a revocation of supervised release hearing. Specifically, the district court stated on page 87 and 88 of the record, with respect to his, what he felt was his obligation to reimpose supervised release was, quote, I don't like that, but what can we do? I am mousetrapped because I don't think I can give him a sentence without supervised release to follow because somebody looking at that will say what's the purpose of the sentence here, end quote. And I think, again, that points out that the district court, the only reason the district court imposed another term of supervised release to follow the custodial sentence he had imposed on Mr. Lahr was because he felt he had, he was bound to do so. And, again, that misinterprets the statute. I think what's significant here is that there really was no recommendation by any of the parties, and that includes the probation office, it includes government counsel, it includes defense counsel, and it includes even the district court himself with respect to wanting to place Mr. Lahr on another term of supervised release. The probation office had recommended a sentence of 10 months of custody with no supervision to follow. Defense counsel, which was myself in the trial court, had effectively given the district court two alternatives, either to impose a sentence of a short period of time in custody followed by a year of supervised release, or an alternative to concur with the probation office's recommendation of a 10-month term of custody followed by no supervised release. And the government itself even concurred with that recommendation of both the defense counsel and of the probation office, and even told the district court on ‑‑ So your recommendation, again, was what? The initial recommendation, Your Honor, it's on page 84 of the record, was either a period of about 144 days in custody, which was the time that Mr. Lahr owed to the Hathaway house, followed by a one-year term of supervised release. I understood that you did recommend one-year term of supervised release. I did, Your Honor, and I did, however, also provide the district court with an alternative recommendation. Again, on page 84 of the record, I had told the district court, Your Honor, you know, my recommendation is 144 days of custody followed by an additional term of supervised release, but then if the court's not inclined to follow that recommendation, then, and again, directly quoting on page 84 of the record, we would concur with the probation officer's recommendation of 10 months with no supervised release to follow. I understand the standard to be that what I'm really looking at is whether your client's substantial rights have been violated. And so if I can find that the sentence was in a proper guideline range and thereafter find that you recommended a supervised release, I don't know whether I can suggest that the substantial rights of your client have been violated. Well, Your Honor, I think the substantial rights of Mr. Lara have been violated, and I would say in three distinct ways. First of all, obviously imposition of supervised release entails numerous restrictions on a person's freedom. So a person's not permitted to be completely free to do what they like. They have to report to a probation officer. They may have to drug test. Their travel is restricted. So that affects substantial rights. Second, I think even though there was an initial recommendation by myself on behalf of Mr. Lara to reimpose supervised release, I think it was clear that as soon as the district court made it known that he was not inclined to follow that recommendation, that there was, and again, it goes back to the alternative sentence proposed at the very onset of the hearing, which was to concur with the probation officer's recommendation of 10 months of custody with no more supervised release to follow. I think another way the substantial rights prong has been met is the fact that the district court itself did not really feel that supervised release was appropriate for Mr. Lara. And again, quoting page 88 of the record, the district court, I think, makes it clear. I agree if I were you, I'd be very frustrated. You bent over backwards to try to supervise this fellow. He's showing he's not amenable. I would say, okay, fine, let's give him a year in jail and end the whole thing. And if he gets in trouble, again, be somebody else's problem to deal with. But I don't think I can do that under the current state of the law in this circuit. So I think even the district court itself did not want to impose supervised release. And certainly, again, the recommendations of the probation office as well as the government were all hinged upon the fact that they were recommending no supervised release to follow. My copy doesn't have the base number. What's the actual transcript number of that page? Do you have it, Hannity? Yes, I do, Your Honor. It's page 13 of the sentencing transcript. It starts on line 18. Yeah, thank you. Thank you, Your Honor. And so I think, again, substantial rights were affected because basically everyone did not want to impose supervised release. It was only the district court who, again, did not want to impose supervised release, but felt obligated to do so because of a misunderstanding or misinterpretation of 3583H. With the remainder of my time, I'd like to reserve it for rebuttal. Thank you. Thank you. Good morning. May it please the Court. My name is Rebecca Cantor. I'm an assistant United States attorney in the Southern District of California, and I represent the United States in this matter. In this case, the district court judge did not err in imposing a 12-month term of custody and 22 months of supervised release upon the second revocation of Mr. Lara's supervised release term. I will focus instead, for Corey did, on the third issue, which is whether the court erred in imposing that supervised release term in particular. In this case ---- Let me focus you a little bit differently. Please tell me how I can get to the fact that this district judge applied our procedural review of first calculating the guidelines and, second, speaking about 3553A factors. Yes, Your Honor. In this case, the court calculated the guideline range at the first supervised release revocation hearing that this petitioner had in the preceding August. He did not calculate the guideline range during the May proceeding on the record. Is there any ---- And in this case ---- Is there any case law that would suggest that making a new sentence at the second revocation, he did not need to calculate the guidelines after Cardi? Yes, Your Honor. I think in the Hammons case, the Hammons, by distinguishing the facts of this case from Hammons, Hammons would actually support the government's position in this case. Hammons talked about the court's failure to ever calculate the guideline range. That's not true here. The court did calculate the grade C range, which was 8 to 14 months, in the preceding hearing. In addition, in Hammons, the court found that the error was also in the probation department's report, which contained the wrong guideline range. So as far as the record in Hammons was concerned, there was only one range ever calculated, and it was wrong. And in this case, the probation report was correct, and the district court, we know, relied upon that. He signed the warrant that was attached to that petition, and the petition was referred to by all the parties during the course of the proceedings. That had the correct range. That coupled with the fact that this district court judge not only calculated the range of the prior proceeding, but let's be clear, calculated it with very extensive discussion by the parties, because he'd actually been charged with a grade A violation. Mr. Ficori informed the court and educated the court as to why it should be a grade C and not a grade A. So there was extensive conversation with the same defendant, the same set of parties, as to what the range is in a grade C. There's no question the judge knew that and correctly applied it by sentencing within the range. As for Your Honor's question about the sentencing factors, this Court in Cardi instructs that it's no need to tick off the factors, I believe is the quote. There's no formalistic or ritualistic need to list what the factors are, as long as the court considers them and the record shows that the court considers them. In this case, that definitely happened. The court, first of all, while not expressly invoking 3553A1, did in fact consider the characteristics of the defendant and his history. It did so on page 80 through 81 in talking about the extensive criminal record, and I'm referring now to the excerpt of records. It talked about his steady work history on pages 81 and 83. It talked about other negative characteristics of him, such as his missing drug tests on page 89 and going to Mexico without permission, pages 89 and 91. His repeated problems at the halfway house with obeying any kind of requirements on page 86. It's also clear the court considered the other 3553A factors, including the requirement of adequately deterring this defendant, which is 3553A2B. On page 95 of the record, the court says, you're not going to get away with indifference here. It's going to come to an end now. You've got to toe the line. It's clear that the court didn't say, I'm trying to deter you, that that's exactly what the court was considering in imposing the sentence. The court also clearly considered 3553A4. Again, it didn't say, I'm going to consider 3553A4. But on page 89 of the record, the court says it's going to consider the alternatives. And it talked explicitly about the prior revocation hearing in which the court gave Mr. Lara a break. It only imposed time served instead of a sentence in the 8-14 range. And it did so to provide Mr. Lara with the opportunity to be in a halfway house and work and provide for his family. This court clearly knew Mr. Lara well. There have been numerous proceedings. And I think in thinking about what the procedural requirements are, it is appropriate to consider the differences between a supervised release hearing and a sentencing hearing. Absolutely, the court does have to follow certain procedural requirements. But we have much more of a record by the time of the supervised release hearing. Aren't they making a sentence nonetheless? Yes, absolutely. And so why a difference? It seems to me in both situations a sentence is imposed. This isn't like in a state court where an overall sentence is imposed in the first place and so you get to the end. If the defendant violates the terms and conditions of his probation, you then impose the sentence. But in federal court, each time the defendant violates the terms and conditions of the supervised release, he gets another sentence. That's exactly right. So why is CARDI not necessary then? CARDI is absolutely applicable in telling the district court judge to consider the appropriate factors and to create a record in doing so. And the distinction I'm making between supervised release sentencing and other sentencing is by the time of the supervised release, the court knows much more about the defendant. CARDI advises that the need to go into detail is going to vary on the facts and circumstances and the complexity of the case. No, it doesn't. He says, this sentence he has the flavor of really I don't know what to do. And you can read it, not to say he knows him so well and he knows the factors so well that he's just kind of going through them, but that it might have helped the judge if the judge had had those factors in mind expressly and had said he was utilizing them to reach this sentence. Right. And I certainly think the court could have been more precise about which factors it was considering at various points. But that fact that it doesn't have the level of precision that perhaps this court would have given during the sentencing or that you might have liked to see doesn't mean the court would have imposed a different sentence. And that really gets to Judge Smith's point, which is that where is the violation of substantial rights? You know from Dahlman. He goes off on this whole rant about McBell. And that's what troubles me is that he's misread our case law. And so I'm troubled by, you know, he's misunderstanding the law. I disagree, Your Honor, that the court misunderstood McBell. As Mr. Ficori said, the court properly stated that under the law of the circuit, and though he didn't say McBell, we all know that's what he was referring to, he cannot punish the offender for the offense. And that's true that he can't. And what he was trying to do is to dance along what this court has called a subtle line between trying to achieve the goals he needs to achieve and yet not be seen as punishing him for the driving without a license or the original offense. It's pretty explicit that it is a, yes, it's a subtle line, but, you know, the breach of trust aspect, and all he's going on about is this guy's breached the trust he's given him and thinking, well, hello, he's not in a box. He's not, you know, it's not purely semantic. Well, I think you make an excellent point that he did go on and on about this, and I think that that in and of itself is very telling because it lets us know that this district court didn't misunderstand the requirements of 3583H. It's not that the district court thought, I have no discretion. If that was the case, this record would be very different. He would have been post-sentenced and then stated, and I'm giving you 22 months of supervised release as I'm required to do by law. That's not what happened. Instead, we have 20 pages of an extensive discussion of I'm mousetrapped. I don't know what to do here. The court trying to strike a difficult balance, and I can tell you that had the court imposed the 12 months or even higher in the range, 14 months, and no supervised release to follow, we'd be here having the same conversation because then the appellant's complaint would be, look, Your Honors, the court didn't impose supervised release. So what does that tell us? He wants to punish this individual, he wants to put him in custody, and he's making no effort to help him get back on track, which, as we know, both the defendant on page 83 of the record, the defendant's father on page 82 of the record, and defense counsel himself on page 84 of the record, all three of them say how beneficial supervised release is to keeping Mr. Lara accountable and to helping make sure that he is going to not harm the public, not continue to present a threat by virtue of his not only his illegal conduct, it also happens to violate supervised release. So on the facts of this record, there cannot be any showing that the court would have not imposed supervised release, and I think that the most telling line is the very last line of the court's imposition of the sentence, in which the court, after having expressed how frustrated he is and that he's not going to be lenient anymore, he says, Mr. Lara, as I said, I'm not being flip about this. You keep violating, I'll keep putting you in jail, and we'll see who gets tired of this first. You're not going to get away with indifference here. You've got a string of probation violations, and it's going to come to an end now. You've got to toe the line and complete your supervised release successfully. These are not the words of a judge who would have chosen, and I see I have three seconds, so I'll wrap up. You're actually in the red. Pardon? You're in the red. Oh, am I? Well, in that case, I'll stop, and thank you very much. Thank you. Your Honors, with respect to the calculation of the guideline range to talk about Judge Smith's question, first of all, the government cited to Hammons, and Hammons found it was plain error to not calculate the guideline range, even though the sentence imposed was within the correctly calculated guideline range. And I think when you look at the sentence, the sentence itself, it's even more problematic, because the recommendation up until the probation officer in the petition, and of defense counsel, my alternative recommendation was for 10 months of custody with no supervised release to follow. It was the government who had initially said 12 months, and that came on page 90 of the record. But there was no actual explanation of the government for what their rationale was for imposing a sentence of 12 months. And the district court apparently accepted 12 months as the appropriate sentence, and again, it's problematic because even McBell itself, quoting the legislative history behind the sentencing scheme, references 3553C, which says that the district court has to give its reasons for imposing a sentence, and McBell even says it has to give its reasons for imposing a sentence at a particular point within the guideline range itself. So we don't know why the district court accepted the government's recommendation of 12 months rather than the 10 months of the probation office. Well, Hammonds was dealing with a heck of a lot more truncated statement by the district court. I think it was a one-liner that said nothing. And I think to ignore all of the colloquy that went on in this thing would be doing a disservice to this district judge, put him on a par with the district judge in Hammonds. Well, I agree that there is certainly more of a colloquy here, but I think what the colloquy shows, and this kind of goes back to whether the district court really considered the 3553A factors, is that, again, there are really two things the district court considered. One, it couldn't punish, and two, this idea of breach of trust was wacky or silly, and those were literally the district court's words. That's on page 88 of the record. And so I think, again, this record shows that the district court didn't adequately give consideration to the 3553A factors. My time is up. Thank you very much. The case just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.